BANK MUTUAL f/k/a First Northern Savings Bank,
Plaintiff-Respondent-Petitioner,

v.

S.J. BOYER CONSTRUCTION, INC., Steven J. Boyer and
Marcy A. Boyer, Defendants-Appellants,

PIONEER CREDIT UNION, Defendant.

Supreme Court

*No. 2008AP912. Oral argument October 20, 2009.
—Decided July 9, 2010.*

2010 WI 74

(Also reported in 785 N.W.2d 462.)

For the plaintiff-respondent-petitioner there were briefs by *Roy L. Prange, Jr.* and *Quarles & Brady LLP,* Madison, and oral argument by *Roy L. Prange, Jr.*

For the defendants-appellants there was a brief by *Philip J. Danen* and *Roels, Keidatz, Fronsee & Danen, LLP, DePere*, and oral argument by *Philip J. Danen.*

An amicus curiae brief was filed by *John E. Knight, James E. Bartzen, Kirsten E. Spira,* and *Boardman, Suhr, Curry & Field LLP,* Madison, on behalf of the Wisconsin Bankers Association.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *Bank Mutual v. S.J. Boyer Construction, Inc.,* 2009 WI App 14, 316 Wis. 2d 266, 762 N.W.2d 826, which reversed an order of the Brown County Circuit Court, Timothy A. Hinkfuss, Judge. The order denied Steven and Marcy Boyer (the Boyers) relief from judgments for the amount due on several notes. The Boyers had guaranteed payment on the notes.

¶ 2. The case presents two issues. The first is whether a mortgagee, by electing to foreclose on a mortgage under the shortened redemption period provided by Wis. Stat. § 846.103(2) (2007–08),[1] forfeits the right to obtain a judgment against a guarantor of payment of the underlying debt. The second is whether, *if* Wis. Stat. § 846.103(2) requires a mortgagee foreclosing under the shortened redemption period to waive or forfeit its right to obtain a judgment against a guarantor of payment, the guarantor may nonetheless waive by contract the right to be free from such a judgment.

■■

¶ 3. We conclude that a mortgagee who forecloses under the shortened redemption period of Wis. Stat. § 846.103(2) does not forfeit the right to obtain a judgment against a guarantor of payment even though it must waive its right to collect any deficiency from the debtor. We conclude that guarantors of payment are not members of the class of persons against whom a mortgagee must waive judgment when invoking Wis. Stat. § 846.103(2) because guarantors are not "personally liable for the debt secured by the mortgage." This statutory phrase is used to distinguish the liability of a borrower on a debt, which is a personal obligation, from

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

the liability of a mortgagor, which is an obligation limited to the property the mortgagor has put up as security for the debt. The statutory phrase does not contemplate guarantors whose liability arises not from the debt but from a separate contract. We also conclude that the textually and contextually manifest purpose of the statute is not furthered by requiring a mortgagee to waive the right to judgment against a guarantor when proceeding under Wis. Stat. § 846.103(2). Because we reach this conclusion, we decline to address whether a guarantor may waive the right to be free from deficiency judgment under Wis. Stat. § 846.103(2).

¶ 4. Because a mortgagee proceeding under Wis. Stat. § 846.103(2) need not waive and does not forfeit judgment against a guarantor of payment, the circuit court properly denied the Boyers' motions for relief from judgment. Consequently, we reverse the decision of the court of appeals.

## I. FACTS AND PROCEDURAL HISTORY

¶ 5. The facts are undisputed. On February 1, 2000, the Boyers entered into a Continuing Guaranty (Unlimited) with First Northern Savings Bank, now doing business as Bank Mutual. This Guaranty read, in relevant part:

> GUARANTY. For value received, and to induce First Northern Savings Bank, S.A. of Green Bay, Wisconsin ("Lender"), to extend credit or to grant or continue other credit accommodations to S.J. Boyer Construction, Inc. ("Debtor"), the undersigned jointly and severally guarantee payment of the Obligations defined below when due .... "Obligations" means all loans, drafts, overdrafts, checks, notes, and all other debts, obligations and liabilities of every kind and

527

description, whether of the same or a different nature, arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to any Debtor, to any Debtor and another, or to another guaranteed or endorsed by any Debtor. . . . This guaranty is also secured (to the extent not prohibited by law) by all existing and future security agreements between Lender and any of the undersigned and by any mortgage stating it secures guaranties of any of the undersigned. This Guaranty is valid and enforceable against the undersigned even though any Obligation is invalid or unenforceable against any Debtor.

The Guaranty also contained a waiver provision:

WAIVER. To the extent not prohibited by law the undersigned expressly waive notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from any Debtor or anyone else, all diligence of collection and presentment, demand, notice and protest and any right to disclosures from Lender regarding the financial condition of any Debtor or guarantor of the Obligations or the enforceability of the Obligations. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which any of the undersigned may, as a guarantor of the Obligations, have against a co-guarantor or any of the Obligations or against any Debtor shall be enforced nor any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

¶ 6. Between February 2003 and October 2005, Boyer Construction executed five business notes to Bank Mutual, totaling nearly $1,400,000.[2] The notes were made in conjunction with loans made by Bank

___

[2] The five notes were executed on February 28, 2003 ($235,000), March 14, 2003 ($336,909.03), April 30, 2003

Mutual to Boyer Construction. The loans were secured by seven mortgages on five properties owned by Boyer Construction.

¶ 7. In time, Boyer Construction defaulted on the notes, and Bank Mutual initiated this action against Boyer Construction and the Boyers individually on February 1, 2007. Bank Mutual's complaint included five counts of foreclosure—one count for each of the properties covered by the seven mortgages—and a separate claim directly against the Boyers for the amounts due under the defaulted notes. For each foreclosure claim, Bank Mutual stated that it waived any deficiency against Boyer Construction.

¶ 8. Boyer Construction and Steven Boyer answered on March 13, 2007, admitting most of the allegations but denying that Steven was liable on the guaranty. Marcy Boyer did not answer.[3]

¶ 9. Bank Mutual moved for summary judgment against Steven and Boyer Construction and default judgment against Marcy. Neither Boyer Construction nor Steven opposed the motion for summary judgment. The court granted both motions. On May 31, 2007, the court entered judgments against Steven and Marcy in the amount of $1,436,457.85. The court also entered a foreclosure judgment on the five mortgaged properties

($380,000), April 19, 2004 ($155,400.59), and October 3, 2005 ($267,604.37). The original cumulative value of the notes was $1,374,913.99.

[3] Marcy was divorced from Steven by the time of the complaint, and she could not be reached at her last known address. Marcy was eventually served by publication, but there was an issue as to whether Bank Mutual exercised reasonable diligence in attempting to serve her personally. Consequently, the parties later stipulated that Marcy's failure to answer was due to excusable neglect under Wis. Stat. § 806.07(1)(a).

owned by Boyer Construction, ordering that all five be sold. The court also filed Findings of Fact and Conclusions of Law in which it noted "[t]hat the Plaintiff [Bank Mutual] waived a deficiency claim against the principal defendant Boyer Construction."

¶ 10. Following entry of the foreclosure judgment, the mortgaged properties were sold at a sheriff's sale. The circuit court authorized the sale three months after entry of the foreclosure judgment because Bank Mutual had waived its right to a deficiency judgment against Boyer Construction pursuant to § 846.103(2), which provides for a shortened redemption period if the mortgagee waives a deficiency judgment against "every party who is personally liable for the debt secured by the mortgage." Bank Mutual was the only bidder and purchased the properties for $1,180,000.

¶ 11. Bank Mutual moved for an order confirming the sheriff's sale. Boyer Construction and Steven objected to confirmation on grounds that the sale violated Wis. Stat. § 846.103 because Bank Mutual elected the shortened redemption period but did not expressly waive a deficiency judgment against the Boyers. On January 11, 2008, the circuit court heard oral argument on this objection. At this hearing, Steven also raised a motion for relief from the judgment under Wis. Stat. § 806.07.[4]

¶ 12. The court overruled the objection and denied Steven's motion for relief. The court based its conclusion on two grounds. First, it concluded that

_____

[4] Specifically, Steven sought relief under Wis. Stat. §§ 806.07(1)(d) and (e), which provide: "On motion and upon such terms as are just, the court . . . may relieve a party or legal representative from a judgment, order or stipulation for the following reasons: . . . (d) The judgment is void; (e) The judgment has been satisfied, released, or discharged."

Steven should have challenged the Findings of Fact and Conclusions of Law, rather than waiting until after the sale to raise his objection. Second, it concluded that the Guaranty, as a contract separate from the business notes, provided an independent basis for the Boyers to be liable to Bank Mutual, in spite of the language of § 846.103(2) requiring the waiver of deficiency against parties "personally liable" for the debts.[5]

¶ 13. On February 8, 2008, Marcy filed a motion to re-open the default judgment pursuant to Wis. Stat. § 806.07. The court also denied Marcy's motion for relief.[6] The court entered an order denying Boyer Construction and the Boyers' motions, on February 26, 2008. Boyer Construction and the Boyers appealed.

¶ 14. The court of appeals reversed the circuit court in a unanimous, published opinion. *Bank Mutual,* 316 Wis. 2d 266. The court began its analysis by looking at the text of Wis. Stat. § 846.103(2) and noting that nothing in the text explicitly excluded guarantors from those "personally liable for the debt secured by the mortgage." *Id.,* ¶ 12. The court then turned to the question of whether the guaranty rendered the Boyers personally liable for the notes issued by Boyer Construction. *Id.*

---

[5] Recognizing that there was no case law directly on point, Judge Hinkfuss noted presciently that whether a guarantor is personally liable for the debt would likely be an issue on appeal.

[6] As noted above, the parties stipulated that Marcy's default resulted from excusable neglect. Nevertheless, because her arguments for relief were the same as Steven's, the court concluded that she had no meritorious defense in the action, a requirement for relief from a default judgment. *See J.L. Phillips & Assocs. v. E&H Plastic Corp.* 217 Wis. 2d 348, 358, 577 N.W.2d 13 (1998).

¶ 15. In determining whether a guaranty makes a party personally liable for a debt, the court distinguished between an absolute guaranty and a conditional guaranty. *Id.*, ¶ 13 (citing 38 Am. Jur. 2d *Guaranty* § 70 (1999)). The court held that in the case of an absolute guaranty, the mortgagee may proceed directly against the guarantor without first proceeding against the mortgagor or its property "because the guarantors are 'liable as principals.' " *Id.* (quoting *First Wis. Nat'l Bank of Oshkosh v. Kramer,* 74 Wis. 2d 207, 212, 246 N.W.2d 536 (1976)). When dealing with a conditional guaranty, however, the mortgagee must exhaust all remedies against the principal debtor prior to proceeding against the guarantor. *Id.* (citing *Cottrell v. New London Furniture Co.,* 94 Wis. 176, 178, 68 N.W. 874 (1896)).

¶ 16. The court held that the guaranty executed by the Boyers was "an unconditional guaranty of payment, not a conditional guaranty of collection." *Id.*, ¶ 14. Consequently, it held, Bank Mutual's decision to expedite the redemption period precluded it from seeking a deficiency judgment against the Boyers. *Id.*, ¶ 15.

¶ 17. The court rejected Bank Mutual's arguments that the Boyers were personally liable only on the guaranty, not the underlying debt. *Id.*, ¶ 17. The court also rejected Bank Mutual's argument that restricting its right to a deficiency judgment was incorrect because it could have proceeded separately under the guaranty without foreclosure. *Id.*

¶ 18. Finally, the court analogized nineteenth century Wisconsin Supreme Court precedent in support of its holding. *Id.*, ¶¶ 19–20. It relied on *Halbach v. Trester,* 102 Wis. 530, 78 N.W. 759 (1899), in which mortgagees who "transferred a note and mortgage by assignment and indorsement," with the effect of guar-

anteeing payment of the note, were personally liable for the debt. *Bank Mutual,* 316 Wis. 2d 266, ¶ 20.

¶ 19. Bank Mutual petitioned this court for review, which we granted on April 14, 2009.

## II. STANDARD OF REVIEW

¶ 20. The Boyers moved for relief from judgment pursuant to Wis. Stat. § 806.07(1). The circuit court denied relief. A circuit court's order denying a motion for relief under § 806.07 is a discretionary decision, and it will not be reversed on appeal absent an erroneous exercise of discretion. *Sukala v. Heritage Mut. Ins. Co.,* 2005 WI 83, ¶ 8, 282 Wis. 2d 46, 698 N.W.2d 610; *State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985). A circuit court acts within its discretion when it examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. *Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991).

¶ 21. The court of appeals reversed the circuit court on the grounds that Bank Mutual, by proceeding under the shortened redemption period in Wis. Stat. § 846.103(2), gave up (waived) its right to judgment against the Boyers on the guaranty of payment. This ruling presents a question of statutory interpretation. Interpreting a statute and applying a statute to undisputed facts are questions of law that we review de novo. *See Hamilton v. Hamilton,* 2003 WI 50, ¶ 14, 261 Wis. 2d 458, 661 N.W.2d 832 (applying de novo review to the application of a statute to undisputed facts). We

decide these questions independently of the circuit court and the court of appeals, but benefit from their analyses. *Id.*

## III. DISCUSSION

¶ 22. This case requires us to interpret Wis. Stat. § 846.103(2). In doing so, we begin by examining our relevant rules of statutory construction. We then place § 846.103(2) in its proper context by looking at the entirety of Wis. Stat. ch. 846, which sets out the rules in foreclosure proceedings. We then examine the phrase "personally liable for the debt secured by the mortgage" to give it its proper meaning. Finally, we examine the textually and contextually manifest purpose of Wis. Stat. § 846.103(2).

A. Rules of Statutory Interpretation

¶ 23. When interpreting a statute, we begin with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We give words their common and ordinary meaning unless those words are technical or specifically defined. *Id.* In this case, "we give legal terms of art their accepted legal meaning." *Estate of Matteson v. Matteson,* 2008 WI 48, ¶ 22, 309 Wis. 2d 311, 749 N.W.2d 557.

¶ 24. We do not read the text of a statute in isolation, but look at the overall context in which it is used. *Kalal,* 271 Wis. 2d 633, ¶ 46. When looking at the context, we read the text "as part of a whole; in relation to the language of surrounding or closely-related stat-

utes; and reasonably, to avoid absurd or unreasonable results." *Id.* Thus, the scope, context, and purpose of a statute are relevant to a plain-meaning interpretation "as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself." *Id.*, ¶ 48. If the language is clear and unambiguous, we apply the plain words of the statute and ordinarily proceed no further. *Id.*, ¶ 46.

¶ 25. The inquiry does not stop if a statute is ambiguous, meaning that "it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶ 47. If a statute is ambiguous, we may turn to extrinsic sources. *Id.*, ¶ 51. Extrinsic sources are sources outside the statute itself, including the legislative history of the statute. *Id.* We sometimes use legislative history to confirm the plain meaning of an unambiguous statute, but we will not use legislative history to create ambiguity where none exists. *Id.*

B. Context and Scope of Wis. Stat. § 846.103(2)

¶ 26. Wisconsin Stat. ch. 846 sets up a comprehensive scheme of foreclosure, including the procedural and substantive requirements for obtaining a deficiency judgment for the unpaid balance on the debt remaining after a foreclosure sale. Therefore, to interpret Wis. Stat. § 846.103(2), we read it in the context of ch. 846 as a whole. *Kalal,* 271 Wis. 2d 633, ¶ 46.

1. Statutory Language

¶ 27. Chapter 846 sets out a two-step procedure for foreclosure of a mortgage. *Shuput v. Lauer,* 109 Wis. 2d 164, 171, 325 N.W.2d 321 (1982). The first step entails the judgment of foreclosure and the sale of the

property. *Id.* During this first step, the court determines the parties' legal rights in the underlying mortgage and obligation, including the right to a deficiency judgment. *Id.* The second step carries into effect and enforces the judgment of foreclosure and sale. *Id.* During this second step, the court orders confirmation of the sale, computes the amount of any deficiency, and enters a judgment for the deficiency. *Id.*

¶ 28. Wisconsin Stat. § 846.01(1) *requires* the court to render judgment of foreclosure and sale in successful foreclosure actions. Wisconsin Stat. § 846.04(1) *permits* a plaintiff seeking foreclosure to obtain a deficiency judgment and sets out the procedure for doing so:

> The plaintiff may, in the complaint, demand judgment for any deficiency that may remain due the plaintiff after sale of the mortgaged premises against *every party who is personally liable for the debt secured by the mortgage.* Judgment may be rendered for any deficiency remaining after applying the proceeds of sale to the amount due. The judgment for deficiency shall be ordered in the original judgment and separately rendered against the party liable on or after the confirmation of sale. The judgment for deficiency shall be entered in the judgment and lien docket and, except as provided in subs. (2) and (3), enforced as in other cases.

*Id.* (emphasis added).

¶ 29. Chapter 846 also sets out two redemption periods, depending on the type of property being foreclosed. For a one-to four-family owner-occupied residence, a farm, a church, or a tax-exempt nonprofit charitable organization, a foreclosure sale may not be held until 12 months after the foreclosure judgment. Wis. Stat. § 846.10(2). For all other properties, a foreclosure sale may not be held until 6 months after the

foreclosure judgment. Wis. Stat. § 846.103(1). Before a sale is held, "[t]he mortgagor, the mortgagor's heirs, personal representatives or assigns may redeem the mortgaged premises" by paying the amount of the judgment. Wis. Stat. § 846.13.

¶ 30. There are two exceptions in the law that permit a mortgagee to shorten a redemption period. One exception, enacted in 1960, provides for a six-month, rather than twelve-month, period of redemption for one- to four-family owner-occupied residences, farms, churches, and tax-exempt charitable organizations, *if* the mortgagee waives a deficiency judgment against "every party who is personally liable for the debt secured by the mortgage." Wis. Stat. § 846.101. The second exception is the statute at issue in this case. Passed in 1978, it provides an exception to all properties *not* covered in § 846.101:

> If the mortgagor of real property other than a one- to 4-family residence that is owner-occupied at the commencement of the foreclosure action, a farm, a church or a tax-exempt nonprofit charitable organization has agreed in writing at the time of the execution of the mortgage to the provisions of this section, *the plaintiff* in a foreclosure action of a mortgage, which mortgage is recorded subsequent to May 12, 1978, *may elect by express allegation in the complaint to waive judgment for any deficiency* which may remain due to the plaintiff after sale of the mortgaged premises *against every party who is personally liable for the debt secured by the mortgage,* and to consent that the mortgagor, unless he or she abandons the property, may remain in possession of the mortgaged property and be entitled to all rents, issues and profits therefrom to the date of confirmation of the sale by the court. When the plaintiff so elects, judgment shall be entered as provided in this chapter, except that no judgment for deficiency may be ordered nor separately rendered

*against any party who is personally liable for the debt secured by the mortgage* and the sale of the mortgaged premises shall be made upon the expiration of 3 months from the date when such judgment is entered.

Wis. Stat. § 846.103(2) (emphasis added).

¶ 31. Three statutes—Wis. Stat. §§ 846.04, 846.101, and 846.103(2)—use the exact same phrase: "every party who is personally liable for the debt secured by the mortgage." Both Wis. Stat. § 846.101 and § 846.103(2), which permit shortened redemption periods in exchange for waivers of certain deficiency judgments, were created decades after the legislature included the phrase "personally liable for the debt secured by the mortgage" in what is now Wis. Stat. § 846.04. We infer that the legislature intended the class of persons against whom deficiency judgments must be waived under Wis. Stat. §§ 846.101 and 846.103(2) to be the same class of persons against whom a deficiency judgment may be obtained under Wis. Stat. § 846.04. *See Heritage Farms, Inc. v. Markel Ins. Co.,* 2009 WI 27, ¶ 40, 316 Wis. 2d 47, 762 N.W.2d 652 ("We generally presume that when the legislature enacts a statute, it is fully aware of the existing laws."). When the same term is used throughout a chapter of the statutes, it is a reasonable deduction that the legislature intended that the term possess an identical meaning each time it appears. *See Coutts v. Wis. Ret. Bd.,* 209 Wis. 2d 655, 668–69, 562 N.W.2d 917 (1997).

2. History and Prior Interpretations of Wis. Stat. § 846.04

¶ 32. Because we conclude that the phrase "personally liable for the debt secured by the mortgage" has the same meaning in both Wis. Stat. § 846.103(2) and § 846.04, we now examine the lengthy history of Wis.

Stat. § 846.04 and our prior cases interpreting that statute.

¶ 33. Deficiency judgments were not available at common law and are available only as provided by statute. *Stellmacher v. Union Mortgage Loan Company*, 195 Wis. 635, 637, 219 N.W. 343 (1928). In 1862 the legislature passed a statute permitting deficiency judgments "against the defendant or defendants who executed the note, bond or other evidence of debt accompanying the mortgage." § 3, ch. 243, Laws of 1862. This statute was later amended to authorize deficiency judgments against "every party who may be personally liable for the debt secured by the mortgage, whether the mortgagor or other persons, if upon the same contract which the mortgage is given to secure." Wis. Stat. § 3156 (1878). In 1935 the statute was changed to its present form, providing simply that the mortgagor may seek a deficiency judgment "against every party who is personally liable for the debt secured by the mortgage." § 364, ch. 541, Laws of 1935.[7]

---

[7] Although it is not clear why the legislature removed the provision, "whether the mortgagor or other persons, if upon the same contract which the mortgage is given to secure," the act removing this language was entitled:

AN ACT to revise portions of TITLE XXV PROCEEDINGS IN CIVIL ACTIONS IN COURTS OF RECORD and TITLE XXVI ACTIONS RELATING TO REAL ESTATE for clarity and conciseness of language and simplifying and improving said proceedings and for harmonizing the substantive provisions with the procedural rules which are being revised by the Supreme Court.

Ch. 541, Laws of 1935.

This language suggests that, by removing the explanation that the deficiency judgment could be brought against "the mortgagor or other persons, if upon the same contract which

¶ 34. An important early Wisconsin case addressing whether a guarantor could be held liable for a deficiency judgment is *Palmeter v. Carey,* 63 Wis. 426, 21 N.W. 793 (1885). In *Palmeter,* the mortgagor conveyed mortgaged property to another party, who then agreed to assume the debt through a clause in the conveyance. *Id.* at 427. Under the statutory language at that time, a deficiency judgment could be obtained against "every party who may be personally liable for the debt secured by the mortgage, whether the mortgagor or other persons, if upon the same contract which the mortgage is given to secure." *Id.* at 430. This court interpreted that statutory language as follows:

> The statute does not require that the person held liable in the foreclosure action for a deficiency must be an original contractor of the mortgage debt. Doubtless one may become a party to it after the indebtedness has been incurred by the mortgagor;—as if he indorse or guaranty a note secured by mortgage after the execution of the mortgage. We think in such case it cannot be successfully maintained that such indorser or guarantor is not within the statute.

*Id.* at 431.

¶ 35. In *Cottrell,* this court clarified the rule set out in *Palmeter.* The guarantor in *Cottrell* indorsed the back of two notes, agreeing to "guaranty the collection of the within note, with all costs thereof." *Cottrell,* 94 Wis. at 177. This court held that "a guarantor of the collection of a note or debt does not become liable on his contract of guaranty until the guarantee has exhausted

---

the mortgage is given to secure," the legislature merely removed what was superfluous language, because the phrase "personally liable for the debt secured by the mortgage" includes, by its own terms, those who may not be the mortgagor but who are liable upon the contract that the mortgage was given to secure.

all the remedies which the law gives him for the collection of his debt from the principal debtor without avail." *Id.* at 178. It further held that "this statute authorizes a judgment for a deficiency against such persons only as are liable for the mortgage debt. The guarantors are liable only according to the terms of their contract." *Id.* at 179. The court also opted to interpret the statute narrowly in light of the common-law rule regarding deficiency judgments:

> The statute makes no new rule of liability. It does not on its face purport to make any such change. In order that a statute shall change a common-law liability or create a new one, the intention to work such an effect must appear on the face of the statute itself with some reasonable degree of clearness.

*Id.* Accordingly, because the mortgagee's remedies had not yet been exhausted, the guarantor was not liable "for the debt secured by the mortgage" and the mortgagee could not obtain a deficiency judgment against him. *Id.*

¶ 36. This court again addressed the issue of whether a guarantor could be held liable for a deficiency judgment in *Halbach.* In *Halbach,* the mortgagees transferred their interest in a mortgage to Christine Webster, and signed their names on the back of the note under the words "Pay to the order of Christine Webster," by which they agreed that they would pay the debt in full to Webster or Webster's transferee. *Halbach,* 102 Wis. at 532. The new mortgagee brought suit for foreclosure and sought a deficiency judgment against the defendants. *Id.* The court held that "when the defendants indorsed the note they became holden to pay the debt secured by the mortgage, upon the conditions stated." *Id.* at 533. The court distinguished

*Cottrell* on the grounds that that *Cottrell* involved a guaranty of collection, not an absolute guaranty of payment. *Id.* at 534. The court concluded, therefore, that the circuit court properly granted a deficiency judgment against the defendants. *Id.*

¶ 37. In *Stellmacher,* the Union Mortgage Company assigned a note and mortgage to a new mortgagee and entered into a written agreement guaranteeing the collection of the debt. *Stellmacher,* 195 Wis. at 635. The new mortgagee brought a foreclosure action and sought a deficiency judgment against both the mortgagor and Union Mortgage Company, the former mortgagee. *Id.* at 636. This court held that the guaranty was not upon the same contract which the mortgage was given to secure, and accordingly it reversed the deficiency judgment against Union Mortgage Company. *Id.* at 637.

¶ 38. Although these early Wisconsin cases provide some guidance on the meaning of the phrase "personally liable for the debt secured by the mortgage," they do not resolve the issue in this case, for several reasons. First, the cases generally focused on whether the guarantor's liability was "upon the same contract which the mortgage is given to secure," in accordance with the statutory language at the time. Second, the cases appear to reach inconsistent results on similar facts.[8] Finally, and most important, none of the cases

---

[8] Commentators at the time discussing *Stellmacher v. Union Mortgage Loan Co.,* 195 Wis. 635, 219 N.W. 343 (1928), observed that "[c]onfusion is apt to result from this ruling," but reasoned that the distinction between *Stellmacher* and cases reaching the opposite conclusion was that *Stellmacher* dealt with a guaranty of collection rather than a guaranty of payment. Kenneth E. Worthing & Donald A. Butchart, *Mortgages-Liability for Deficiency Judgment,* 5 Wis. L. Rev. 61 (1928). However, so long as the guaranty is made on a completely

addresses a factual situation in which the guarantor's liability arises from a completely independent contract of guaranty.[9] For example, in *Halbach,* the previous mortgagee directly signed the back of the note, assuming liability on and under the terms of the note. This situation is distinguishable from the situation at hand, in which the guarantor's liability arises from a separate contract of guaranty. *Halbach,* 102 Wis. at 532.

C. "Personally liable for the debt secured by the mortgage"

¶ 39. We now define the phrase "personally liable for the debt secured by the mortgage" used in Wis. Stat. § 846.103(2). We acknowledge that, read according to its common and ordinary meaning, the phrase does not clearly exclude guarantors. Thus, reasonable people could read the language to cover the Boyers. Nonetheless, it is clear to us that the phrase "personally liable for the debt" is a term of art that must be given its legal meaning. *See Estate of Matteson,* 309 Wis. 2d 311, ¶ 22. We conclude that, by using the phrase "personally liable for the debt," the legislature intended to use the

separate contract, neither a guarantor of payment nor a guarantor of collection is personally liable for the debt secured by the mortgage.

 [9] *See Stellmacher,* 195 Wis. at 635 (bank assigned note to plaintiff and guaranteed collection); *Palmeter v. Carey,* 63 Wis. 426, 21 N.W. 793 (1885) (mortgagor conveyed mortgaged premise to defendant, in which conveyance the defendant assumed the debt); *Cottrell v. New London Furniture Co.,* 94 Wis. 176, 68 N.W. 874 (1896) (guarantor indorsed back of note, guaranteeing its collection); *Halbach v. Trester,* 102 Wis. 530, 78 N.W. 759 (1899) (mortgagees assigned mortgage and signed guarantee on the back of the note).

phrase's specific legal meaning and did not intend it to encompass guarantors who guarantee a debt through a contract separate from the note creating the debt.

¶ 40. We reach this conclusion for three reasons. First, the phrase "personally liable" has traditionally been used to distinguish the borrower's liability, which is a personal obligation based upon the note, from the mortgagor's liability, which is an obligation limited to the property named in the mortgage that is provided as security for the note. Second, a guarantor's liability has traditionally been treated as separate and distinct from the liability of the borrower, contingent on the terms of the guaranty. Third, other states with statutes insulating borrowers from deficiency judgments have generally refused to extend those protections to guarantors.

1. Legal meaning of "personally liable for the debt"

¶ 41. In the context of foreclosure law, the term "personally liable for the debt" has traditionally been used to distinguish liability on the note, which is a personal obligation, from liability on the mortgage, which is an obligation limited to the property given to secure the debt. Thus, the phrase explains that a deficiency judgment can be obtained against a mortgagor only if that mortgagor is also liable on the underlying debt.

¶ 42. The use of the phrase "personally liable for the debt" to distinguish the borrower's liability on the note from the mortgagor's liability on the mortgage is illustrated by *Farmers & Merchants Bank v. Matsen,* 219 Wis. 401, 263 N.W. 192 (1935). In *Matsen,* the bank began an action to collect the amount due on a note, and the borrower raised the defense that a foreclosure action was already pending. *Id.* at 401. This court framed the issue as:

544

> Does the fact that an action is pending for the foreclosure of a mortgage and for a judgment for a deficiency constitute a defense to a subsequent action commenced by the same plaintiff, demanding judgment on the obligation secured by the mortgage against those personally liable thereon?

*Id.* at 402.

¶ 43. The court began by noting that deficiency judgments were not available at common law. *Id.* at 403. It added that the Wisconsin foreclosure statutes permitted a plaintiff in a foreclosure action also to seek a deficiency judgment. *Id.* The court explained the relationship between this statutory scheme and the common-law rule:

> When a deficiency judgment is entered in a foreclosure action, it is a final adjudication of the defendant's common-law liability for the debt. There is in reality but one judgment, the judgment of foreclosure. The so-called deficiency judgment is merely a completion of the judgment upon the coming in and confirmation of the report of sale.

*Id.* The court further noted that the deficiency statute "merely permits a combination of two causes of action, one upon the note, and one for foreclosure, with certain restricting provisions." *Id.* Thus, it concluded, the lender was not required to seek a deficiency judgment, but once the lender "put the note in suit and asserted a *personal liability* against the defendants, he may not again assert that liability in a separate action at law." *Id.* at 403–04 (emphasis added).

¶ 44. *Matsen* clearly demonstrates the purpose of the phrase "personally liable for the debt secured by the mortgage" in Wis. Stat. § 846.04. The statute unites an action in equity on the foreclosure with an action in law on the debt. Thus, it erases the common-law distinction

545

that separated a legal action on the mortgagor's personal liability from an equitable action on the foreclosure itself.[10] With the passage of Wisconsin's deficiency statute, what normally would have been pursued in a court of law—an action to hold the party "personally liable"—could now be pursued together with the foreclosure action.[11]

¶ 45. In *Glover v. Marine Bank of Beaver Dam,* 117 Wis. 2d 684, 345 N.W.2d 449 (1984), this court again addressed the distinction between a mortgagor's obligation to provide security and a borrower's personal liability on the underlying debt. In *Glover,* the mortgagee was given four mortgages on five properties to secure two notes. *Id.* at 686. The Glovers argued that because the bank foreclosed on only some of the mortgages, waiving its right to go after the Glovers personally for any deficiency, it actually extinguished the underlying debt. *Id.* at 690. The court rejected that argument, holding that "this theory confuses the historical distinction between the two separate elements of the real estate mortgage—the debt itself and the mort-

---

[10] Wisconsin Stat. ch. 846 follows the basic rule that a judgment on the unpaid balance "ordinarily may be obtained by a deficiency decree given by the equity court in the foreclosure action itself." 1 Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law,* § 8.1, at 933–34 (5th ed. 2007) [hereinafter Nelson & Whitman].

[11] The distinction in *Farmers & Merchants Bank v. Matsen,* 219 Wis. 401, 263 N.W. 192 (1935), was further explained in *First Wis. Nat'l Bank of Oshkosh v. Kramer,* 74 Wis. 2d 207, 246 N.W.2d 536 (1976). In that case, this court held that *Matsen* did not prohibit a bank from proceeding on a guaranty of payment while awaiting the resolution of the foreclosure. *Id.* at 213. The court reached this conclusion, in part, on the grounds that the reasoning in *Matsen,* which pertained to an action on the note, did not apply to a separate guaranty of payment. *Id.* at 214–15.

gage acting as security for the debt." *Id.* at 695. Although by statute these two causes of action could be brought together, the court concluded "that the historically separate treatment of the two elements controls in our interpretation of sec. [846.101]." *Id.*

¶ 46. The distinction explained in *Glover* is further explained by the approach to personal liability taken by the Restatement (Third) of Property: "A mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation. A mortgage is enforceable whether or not any person is personally liable for that performance." Restatement (Third) of Property: Mortgages § 1.1. Thus, the Restatement explains, parties may agree to "nonrecourse" or "limited recourse" mortgages, which preclude or limit personal liability. *Id.*, § 1.1 cmt. It goes on to explain:

> If personal liability is entirely excluded by the parties' agreement, the effect is to restrict the mortgagee's remedy for nonperformance to foreclosure of the mortgage. Such a restriction or exclusion of personal liability does not impair the enforceability of the mortgage by means of foreclosure, but it does limit or bar the mortgagee's access to both a personal judgment prior to foreclosure and a deficiency judgment following foreclosure.

*Id.*

¶ 47. This language suggests that the phrase "personally liable for the debt" pertains to those situations in which the borrower may be held personally liable for a debt beyond the foreclosure on any property that has been mortgaged as security for the debt. It supports our conclusion that "personally liable" is a term of art used to distinguish the borrower's liability, which is a per-

sonal obligation, from the mortgagor's liability, which is an obligation limited to the property used to secure the note (debt).

¶ 48. Our Wisconsin analysis is supported by the approach Illinois courts have taken on the subject. In *City of Chicago v. Chatham Bank of Chicago,* 203 N.E.2d 788 (Ill. App. 1964), the Illinois Appellate court interpreted a statute that permitted a deficiency judgment against "the persons indicated as being personally liable." *Id.* at 793. The court concluded that Illinois law clearly prohibited a deficiency judgment against the guarantor, and that a guarantor's liability could be enforced only through a separate action brought in a court of law rather than a court of equity. *Id.*

¶ 49. In reaching this conclusion, the court relied on the traditional rule regarding deficiency judgments: "There is a clear and marked distinction between the power of a court of equity to decree mortgage foreclosures and its power to enter personal deficiency judgments." *Id.* at 792 (quoting *Schnur v. Bernstein,* 32 N.E.2d 675, 678 (Ill. App. 1941)). It noted that a court in equity had jurisdiction over foreclosure by its equity powers, but had authority over deficiency judgments only by virtue of statute. *Id.* Thus, the appellate court concluded: "Had the legislature so intended they could very easily with apt words have expressed their intention to make guarantors liable for a deficiency judgment in a foreclosure action." *Id.* at 793.

¶ 50. The approach taken in *Chatham* illustrates the traditional distinction between the equitable nature of the foreclosure and the legal nature of the deficiency. *See also Mortgage Syndicate, Inc. v. Do & Go Equipment, Inc.,* 286 N.E.2d 520 (Ill. App. 1972).

¶ 51. A similar distinction is encompassed by Wis. Stat. § 846.04, which permits a deficiency judgment

within the foreclosure action only against parties "personally liable for the debt secured by the mortgage." Wis. Stat. § 846.04(1). Under § 846.04(1), the court "shall" order judgment for deficiency in the original judgment and separately render it upon confirmation of sale. *Id.* In other words, upon confirmation of sale, a deficiency judgment against the borrower automatically follows a successful foreclosure action by operation of law, entirely from within the foreclosure action itself. However, under § 846.04, a judgment against a guarantor does not automatically follow a foreclosure judgment. It must be brought as a separate legal cause of action, as was done in the instant case. Thus, while a mortgagee may bring a claim against a guarantor as part of the same legal proceeding, it must bring a separate cause of action and separately prove the guarantor's liability *on the contract of guaranty*.

¶ 52. In sum, the phrase "personally liable for the debt" has traditionally been used in foreclosure law to distinguish the borrower's liability on the debt, which is a personal obligation, from the mortgagor's liability, which is an obligation limited to the property used to secure the debt. Because Wis. Stat. §§ 846.04 and 846.103 use this term of art familiar to the law of mortgages, we decline to expand the statute's scope beyond the traditional legal meaning of the phrase.

2. Nature of the guarantor's liability

¶ 53. Our conclusion that the phrase "personally liable for the debt secured by the mortgage" does not include guarantors of payment is further supported by the principle that a guarantor's liability arises not from the debt itself, but from a separate guaranty contract. Therefore, although guarantors of payment are person

ally liable for some amount according to the terms of their guaranty contract, they are not personally liable for the debt secured by the mortgage.

¶ 54. Wisconsin law treats the liability of a guarantor as separate and distinct from the liability of the borrower, arising not from the debt itself but from the terms of the guaranty contract. In *Continental Bank & Trust v. Akwa*, 58 Wis. 2d 376, 206 N.W.2d 174 (1973), a guarantor raised certain affirmative defenses based on provisions of the Uniform Commercial Code (UCC). This court, relying on a provision of the UCC stating that "[n]o person is liable on [a negotiable] instrument unless his signature appears thereon," Wis. Stat. § 403.401, explained:

> [The plaintiff] is not proceeding on the Akwa-Downey notes but upon a breach of the contract of guaranty. . . . [A]n action to enforce the liability of the guarantor must be in the form of an action for damages for a breach of the contract of guaranty, and not an action upon the underlying indebtedness. While the affirmative defenses . . . may be fatal to plaintiff's cause of action, if he were proceeding upon the instruments, they are not necessarily fatal to plaintiff's cause of action upon its separate and independent contract of guaranty with the defendants.

*Id.* at 387.

¶ 55. The reasoning in *Akwa* directly supports our conclusion that guarantors are not "personally liable for the debt secured by the mortgage" under Wis. Stat. § 846.103(2). It articulates a clear rule that guarantors are liable only according to the terms of their contracts, and are not liable for the debt itself.[12] This principle is

---

[12] The principle articulated in *Continental Bank & Trust v. Akwa,* 58 Wis. 2d 376, 206 N.W.2d 174 (1973), has been consistently applied in other cases. *See Cottrell,* 94 Wis. at 179 ("The

codified in the phrase "personally liable for the debt secured by the mortgage." We see no reason to believe that this language encompasses parties whose liability arises from an independent contract of guaranty.

¶ 56. This conclusion is further supported by *Kramer.* In *Kramer,* as in this case, a corporation executed a mortgage and two individuals guaranteed the amount of the underlying debt. *Kramer,* 74 Wis. 2d at 209. The bank foreclosed and brought a separate action against the guarantors for the deficiency. *Id.* The defendants argued that the suit against them personally was not timely until an appeal of the foreclosure judgment was resolved. *Id.* This court held that "no efforts to collect from the . . . corporation or to foreclose under the mortgage were necessary as a prerequisite to enforcing the primary liability of these guarantors under their individual guaranties of payment." *Id.* at 212. We relied on the distinction between a guaranty of collection and a guaranty of payment to conclude that the bank was entitled to pursue the guarantors under a guaranty of payment regardless of what steps were currently being taken to foreclose. *Id.* at 215.

¶ 57. The *Kramer* case did not address whether the defendants, as guarantors, were parties "personally liable for the debt secured by the mortgage," and could have been included in the foreclosure action on the

---

guarantors are liable only according to the terms of their contract."); *Klatte v. Franklin State Bank,* 211 Wis. 613, 623, 248 N.W. 158 (1933) ("A guarantor's contract is separate and distinct from that of his principal, and he is bound only by the terms of his own contract."); *Zuehlke v. Engel,* 229 Wis. 386, 392, 282 N.W. 579 (1938) ("[T]he liability of the guarantor is upon a separate contract"); *Crown Life Ins. Co. v. La Bonte,* 111 Wis. 2d 26, 32, 330 N.W.2d 201 (1983) ("A guarantor's liability depends upon the particular terms of his or her engagement. . . . [T]he important question is: What did the parties intend?").

deficiency judgment. Nonetheless, the case stands for the proposition that guarantors' liability arises from the guaranty contract, not from the debt secured by the mortgage.

¶ 58. In this case, the court of appeals reasoned, applying *Kramer*, that the Boyers were "personally liable for the debt secured by the mortgage" because they were *primarily* liable for the debt. It concluded that "[b]ecause they were principal obligors and primarily liable for the debts secured by the mortgages, it follows that the Boyers were 'personally liable for the debts secured by the mortgages,' under Wis. Stat. § 846.103(2)." *Bank Mutual,* 316 Wis. 2d 266, ¶ 16.

¶ 59. We disagree. The court of appeals' reasoning confused terms. Boyer Construction was "personally liable for the debt secured by the [five] mortgage[s]." It was also primarily liable for the debt as it was directly responsible for it. *See Black's Law Dictionary* 933 (8th ed. 2004) ("primary liability" is "[l]iability for which one is directly responsible, as opposed to secondary liability."). By contrast, Steven and Marcy Boyer were neither "personally liable" nor "primarily liable" on the debt because they did not sign the notes secured by the mortgages. However, Steven and Marcy Boyer signed the guaranty, a separate contract. They were "personally liable" on this contract of guaranty and primarily liable on it because they signed the guaranty. The Boyers also were primarily liable on the guaranty in a temporal sense because Bank Mutual did not have to wait for a foreclosure on the mortgages to proceed personally against the Boyers. *See Kramer,* 74 Wis. 2d at 212.

¶ 60. The early Wisconsin cases discuss the distinction between a guarantor of collection and guarantor of payment. As we see it, however, when a guarantor's liability arises from a completely separate

contract of guaranty, the guarantor is not "personally liable for the debt secured by the mortgage" and, in such a case, neither a guaranty of payment nor a guaranty of collection comes within the scope of the redemption statute.[13] A mortgagee may proceed on a guaranty of payment upon a different timeline than it may proceed on a guaranty of collection. In neither case, however, is the guarantor liable for the debt secured by the mortgage; rather, the guarantor is liable for what he or she agreed to in the guaranty.

¶ 61. The Boyers also argue that the phrase "nor separately rendered" in Wis. Stat. § 846.103 expands the scope of that statute to include guarantors who are liable on a separate document. This phrase, however, merely keeps the language of Wis. Stat. § 846.103(2) consistent with that of Wis. Stat. § 846.04(1), which permits a deficiency judgment to be "ordered in the original judgment and separately rendered against the

---

[13] The court of appeals based its distinction on 38 Am. Jur. 2d *Guaranty* § 70 (1999), which provides that "if the guaranty is absolute or unconditional, such as a guaranty of payment of a promissory note, the guarantor becomes a debtor to the party guaranteed (creditor or obligee) and primarily liable when the principal obligation has matured and is not performed." This principle, however, still relates only to the timing that the mortgagee is required to follow in collecting on the guaranty. A lender may pursue a guarantor who is primarily liable before exhausting its remedies against the debtor, but it must still bring that action on the contract of guaranty, not on the debt itself. This principle must also be considered along with the principle that "[b]ecause guaranties are separate contracts, collateral to and independent of any underlying agreement, a guarantor's rights and liability arises primarily from the guaranty agreement itself." *Id.*, § 2. Thus, so long as the guaranty is made as a separate contract, neither a guarantor of payment nor a guarantor of collection is personally liable for the debt itself.

party liable." A court may order a deficiency judgment in the original foreclosure judgment, but cannot actually render the deficiency judgment until after the sale is confirmed. *Glover,* 117 Wis. 2d at 695.[14] The phrase "separately rendered," in § 846.103(2) underscores the fact that a deficiency judgment may not be rendered in the foreclosure following a shortened redemption period, "nor separately rendered" later. It does not refer to a guarantor against whom action may be taken in a separate suit or claim on the guaranty.[15]

---

[14] In *Glover v. Marine Bank of Beaver Dam,* 117 Wis. 2d 684, 345 N.W.2d 449 (1984), this court adopted its earlier reasoning on this point from *Welp v. Gunther,* 48 Wis. 543, 4 N.W. 647 (1880), which was decided when the statute specifically required the foreclosure judgment to contain an order directing that a deficiency judgment be rendered. Although the statute had changed to its current language by the time *Glover* was decided, we held that the new language described the same procedure. *Id.* at 696.

[15] The dissent characterizes the judgments in this case as the "separately rendered" judgment required under Wis. Stat. § 846.04(1), and therefore treats them as, in fact, deficiency judgments. Dissent, ¶¶ 111–13. This argument merges two legally distinct conceptions of liability. The distinction arises not from whether a guarantor is "personally liable," but what the guarantor is personally liable for. A debtor is personally liable for the debt secured by the mortgage, but a guarantor is personally liable only according to the terms of the guaranty. *See Akwa,* 58 Wis. 2d at 387.

The dissent, while acknowledging that the guarantors "are made liable to the creditor *under the terms of their agreement,"* dissent, ¶ 82 n.2 (emphasis added), proceeds to treat the distinction between personal liability on the note and personal liability on the guaranty as a matter of form over substance. Dissent, ¶ 112. This distinction, however, goes directly to the substance of the action a mortgagee must bring to collect from a guarantor. The mortgagee may obtain a judgment against the

## 3. Interpretation of Anti-Deficiency Statutes in other States

¶ 62. Our conclusion that a guarantor's liability under a guaranty of payment arises independent of the debt secured by the mortgage is supported by courts in other states interpreting their anti-deficiency statutes. Anti-deficiency statutes are statutes "enacted to limit the rights of secured creditors to recover in excess of the security." *Black's Law Dictionary* 918 (8th ed. 2004). Anti-deficiency statutes may prohibit the mortgagee from obtaining a deficiency in certain situations, such as when the sale is by power of foreclosure, the sale purchaser is the mortgagee, or the property is a purchase money mortgage.[16]

¶ 63. Although states have a wide variety of anti-deficiency legislation with a wide variety of statutory language, courts have generally refused to extend to guarantors the protection of such statutes.[17] This gen-

debtor upon proof that the debtor has defaulted on the note. To obtain a judgment against a guarantor, however, the mortgagor must prove the existence of a guaranty contract and that the guarantor is liable under the terms of that contract. *See Akwa*, 58 Wis. 2d at 387. This fact encapsulates the basic distinction between personal liability for the debt secured by the mortgage and personal liability under a separate contract of guaranty.

[16] James B. Hughes, Jr., *Taking Personal Responsibility: A Different View of Mortgage Anti-Deficiency and Redemption Statutes,* 39 Ariz. L. Rev. 117, 124 (1997). Wisconsin Stat. § 846.103 is, in a sense, a form of anti-deficiency legislation because it limits a mortgagee's right to deficiency in certain circumstances. Wisconsin also has another anti-deficiency provision in Wis. Stat. § 846.165(2), which requires foreclosed property to be sold at its fair value.

[17] Nelson & Whitman, *supra,* § 8.3 at 951 ("There is some judicial predisposition to deny guarantors the protection of

eral pattern is illustrated by *Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640 (N.D. 1980), where the defendants unconditionally guaranteed any obligation on a loan from a bank to a corporation. *Id.* at 641. The bank foreclosed, did not seek a deficiency judgment, and brought a separate suit against the guarantors. *Id.* at 642. The North Dakota Supreme Court was asked to interpret a statute that permitted mortgagees to seek a deficiency judgment against "parties personally liable for that part of the debt." *Id.* at 643. The guarantors sought protection of the statute, which limited recovery in a deficiency judgment to the difference between the amount of the debt and the fair market value of the land. *Id.* at 642.

¶ 64. The court first distinguished an earlier case in which a party, who was not on the mortgage, had signed the note and was therefore "personally liable on the debt." *Id.* at 643. The court then noted that the liability in the current case was "not based on obligations imposed by the notes or the mortgages given to secure the notes, but on a separate and distinct contract of guaranty." *Id.* The liability, "although it may result in requiring a guarantor to pay the note, is not predicated upon 'the terms of the instrument,' but upon a contract entirely separate and distinct." *Id.* (quoting *Northern State Bank v. Bellamy*, 125 N.W. 888, 890 (N.D. 1910)). The court declined to "extend the scope of the anti-deficiency statutes beyond that which is clear from the

anti-deficiency legislation."); Restatement (Third) of Property: Mortgages, § 8.4 cmt. b at 605 ("There is a substantial body of case law that denies guarantors the protection of anti-deficiency legislation."); CJS Guaranty § 115 ("Generally, the protections afforded to debtors under antideficiency legislation do not directly protect guarantors from liability for deficiency judgments after mortgage foreclosure.").

statute." *Id.* (citing *Fetzer v. Minot Park District,* 138 N.W.2d 601 (N.D. 1965)). Finally, concluding that "the liability of the guarantors derives wholly from the guaranty agreement," the court proceeded to determine liability based on the terms of the agreement. *Id.* at 643–44.

¶ 65. The *Mueller* court's inquiry into who was "personally liable for that part of the debt" is similar to the underlying issue in this case. Like the statute interpreted in *Mueller,* Wis. Stat. § 846.103(2) applies only to those parties personally liable for the debt. Like the guarantors in *Mueller,* the Boyers were not liable according to the terms of the note, but rather were liable according to the terms of a wholly separate and distinct contract of guaranty.

¶ 66. Although *Mueller* is relevant because of the similarity in language between the North Dakota statute in that case and the language of Wis. Stat. § 846.103(2), other courts have reached similar conclusions based on different statutory language. They have refused to extend anti-deficiency protections on the same grounds on which the court in *Mueller* based its decision: namely, that a guarantor's liability arises not from the debt but from a separate guaranty contract.[18]

---

[18] Accordingly, courts "typically reason that the liability of a guarantor is based on a separate and distinct contract of guaranty and not imposed by the note or the mortgage securing it." Nelson & Whitman, *supra,* § 8.3 at 951. *See Mariners Sav. & Loan Assn. v. Neil,* 22 Cal. App. 3d 232 (Cal. Ct. App. 1971) (Defendant's "obligation on the contract of guarantee was separate and distinct from the primary obligation of his wife."); *Valley Bank v. Larson,* 663 P.2d 653, 655 (Id. 1983) (approving trial court's conclusion that guarantor could not receive protection of time limit for seeking deficiency judgments "because his obligation is independent of the principal debtor's."); *Riverside*

Because this principle applies to § 846.103(2) as well, we find the interpretation of anti-deficiency statutes in other states persuasive in our interpretation of § 846.103(2).

## D. Purposes of the Statute

¶ 67. We next turn to the textually and contextually manifest purposes of Wis. Stat. § 846.103(2). *See Kalal*, 271 Wis. 2d 633, ¶ 49. Interpreting the phrase "personally liable for the debt secured by the mortgage" to exclude guarantors effectuates the purposes of § 846.103(2).

¶ 68. In *Glover*, the court explained the purposes of Wis. Stat. § 846.101.[19] *Glover* addressed the question of whether a mortgagee who elected the shortened redemption period under Wis. Stat. § 846.101 and waived the right to a deficiency judgment was then precluded from satisfying the remainder of the debt by foreclosing on other mortgages securing the same debt.

---

*Nat'l Bank v. Manolakis*, 613 P.2d 438, 441 (Okl. 1980) ("A guarantor's undertaking . . . creates a collateral obligation independent and separately enforceable from that of the principal debtor. . . . The obligation of a guaranty is contractual, and the inquiry must, in each case, focus on the precise terms of the guarantor's undertaking—the dimension or breadth of the promise."). In a similar context, the Supreme Judicial Court of Massachusetts refused to apply a statute requiring a foreclosing mortgagee to give notice to "the holder of a mortgage note or other obligation secured by mortgage of real estate" to guarantors, on the grounds that "the liability of a guarantor does not flow from an 'obligation secured by a mortgage of real estate' but is independent of that obligation." *SKW Real Estate Ltd. P'ship v. Gold*, 702 N.E.2d 1178, 1181 (Mass. 1998).

[19] Wisconsin Stat. § 846.101 is analogous to Wis. Stat. § 846.103, because it contains some of the same language but applies to different classes of property with different periods of redemption.

*Glover,* 117 Wis. 2d at 687. Concluding that the mortgagee could collect on the remaining mortgages, the court explained the purpose of § 846.101:

> [The statute] obviously benefits the mortgagee, since the mortgagee may be able to reduce the losses normally attendant to the twelve-month redemption period. However, the mortgagor is also protected, because at the end of this shortened period, the mortgagor is secure in the knowledge that he or she will not be responsible for any deficiency resulting from the sale.

*Id.* at 694–95.

¶ 69. The court confirmed its explanation of the purpose behind Wis. Stat. § 846.101 by examining legislative history:

> The language prefacing the enactment of [sec. 846.101], evinces an attempt by the legislature to shorten the period of redemption in a complicated and costly time-consuming process. Likewise, it evinces a concern for the protection of the mortgagor, who is not allowed the usual twelve-month period in which to redeem. This protection comes in the form of a waiver of personal deficiency by the mortgagee.

*Id.* at 699.

¶ 70. Including guarantors within the class of parties "personally liable for the debt secured by the mortgage" would not further either of the two statutory purposes articulated in *Glover.* First, it would both lengthen and complicate the redemption process. More banks would opt for the standard redemption period to ensure that they would be able to collect against their guarantors. Second, it would do little to protect mortgagors and could even harm them because banks might limit their lending to loans that could be provided without the extra assurance of a guarantor, or opt for the standard redemption period, leaving the mortgagor

open to liability for a deficiency judgment. Neither of these results is consistent with the statute's goal of expediting the foreclosure process while protecting the rights of the mortgagor.

¶ 71. The approach taken by other jurisdictions also provides guidance on how best to further the intended purpose of Wis. Stat. § 846.103. A number of courts have reasoned that the protections of anti-deficiency statutes should not be extended to guarantors because the statutes are intended to protect borrowers.[20] Their reasoning has generally followed this basic pattern:

> [The] denial of protection to guarantors often involves "purchase money" anti-deficiency legislation, "one-action" rules, and prohibitions of deficiency judgments after power of sale foreclosure. [These] statutes are aimed primarily at protecting debtors. . . . [By contrast,] [f]air value legislation is primarily aimed at preventing the unjust enrichment of the mortgagee and the extension of "fair value" protection to guarantors clearly serves that purpose.

Restatement (Third) of Property: Mortgages, § 8.4, cmt. b. at 605.

---

[20] *See Long v. Corbet,* 888 P.2d 1340, 1345 (Ct. App. Ariz. 1994) (describing the purpose of anti-deficiency statute as "protect[ing] certain homeowners from the financial disaster of losing their homes to foreclosure plus all their other nonexempt property on execution of a judgment for the balance of the purchase price"); *Nat'l City Bank of Minneapolis v. Lundgren,* 435 N.W.2d 588, 592 (Minn. App. 1989) (refusing to apply a statute that was not expressly limited to mortgages to guarantors based on the legislative purpose of protecting "the people foreclosed"); *Machock v. Fink,* 137 P.3d 779, 784 (Utah 2006) (refusing to apply a "one-action" rule to guarantors because it would not further the purpose of eliminating harassment of debtors or multiple litigation against debtors).

¶ 72. Like the anti-deficiency legislation in other states, the deficiency-waiver provision in Wis. Stat. § 846.103(2) is designed to protect borrowers. We see no indication that the provision of § 846.103(2) seeks to prevent unjust enrichment of the mortgagee, as this purpose is already served by the fair value requirement of Wis. Stat. § 846.165(2).[21] Thus, the decisions of other states not to extend the protections of anti-deficiency statutes support our decision not to extend the protections of § 846.103(2) to guarantors in a fashion that would not further the statute's purposes.

¶ 73. Bank Mutual argues that Wis. Stat. § 846.103(2) does not include guarantors because the purpose of the statute is to address redemption rights, an argument that was rejected by the court of appeals.[22] Although § 846.103 connects the deficiency waiver and the shortened redemption period, it does not limit the waivers to those with a right to redeem. The phrase "personally liable for the debt secured by the mortgage," by its very terms, contemplates the distinction between the borrower's personal obligation and the mortgagor's

---

[21] Section 846.165(2) provides:

> In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs.

[22] The court of appeals reasoned that the difference in language between the class of persons against whom deficiency is waived (parties "personally liable for the debt secured by the mortgage") and the class of persons who can redeem ("the mortgagor, the mortgagor's heirs, personal representatives or assigns") indicated that the two classes were not coterminous. *Bank Mutual*, 316 Wis. 2d 266, ¶ 12 n.4.

obligation to provide security for the debt. A person has the right to redeem property only if he has some kind of interest in the property.[23] The person may be personally liable for a debt secured by a mortgage, but may not have a right to redeem if the debt was secured by another person's property. On the other hand, a mortgagor, who has a right to redeem, may not necessarily be personally liable for the underlying debt.[24]

¶ 74. Although the deficiency-waiver provision of Wis. Stat. § 846.103(2) is not limited to those who have redemption rights, guarantors possess neither redemption rights nor personal liability on the underlying debt. That the statute does not limit its protections to those with a right to redeem does not support the conclusion that guarantors are parties personally liable for the debt. Guarantors are in a significantly different position from both borrowers and persons with a right to redeem, and are therefore outside the scope of the protections contained in Wis. Stat. § 846.103(2).

¶ 75. Finally, our interpretation of Wis. Stat. § 846.103(2) leads to a more reasonable and sensible result than an interpretation that would require a

[23] Under Wis. Stat. § 846.13, "[t]he mortgagor, the mortgagor's heirs, personal representatives or assigns may redeem the mortgaged premises." The common thread among these parties is that they all have an interest in the property, and therefore Wisconsin law accords with the general rule that "only those with an interest in the property that will be prejudiced by foreclosure can redeem." Nelson & Whitman, *supra*, § 7.2 at 773.

[24] This may occur if a purchaser takes title to property subject to a mortgage without assuming the underlying debt. *See, e.g. Cassidy v. Bonitatibus*, 473 A.2d 350, 351 (Conn. 1984). It may also occur in the case of a "non-recourse" mortgage. Restatement (Third) of Property: Mortgages § 1.1 cmt.

mortgagee to waive judgment of deficiency against a guarantor. In *Glover,* we relied on this principle when interpreting Wis. Stat. § 846.101:

> Not allowing the Bank to foreclose upon the remaining mortgages would in essence deprive the Bank from realizing upon the security on which it initially based its decision to extend the loan. It would also provide a windfall to the mortgagors. However, in order to protect the mortgagor in situations where the mortgagee does not foreclose upon all mortgages securing the debt in one proceeding, we hold that the mortgagee waives personal deficiencies upon the completed sale of *all of* the remaining properties.

*Glover,* 117 Wis. 2d at 699.

¶ 76. The reasoning espoused in *Glover* is directly applicable here. If Wis. Stat. § 846.103(2) requires a waiver of deficiency against a guarantor, mortgagees would be deprived of some of the security they relied upon for their loan—not the security provided by the mortgage, but the security provided by the guaranty. Such an interpretation would also result in a windfall to the guarantor, who would be relieved of liability under the guaranty without paying the obligation set out in the guaranty. We conclude that the legislature did not intend such a result when it enacted Wis. Stat. § 846.103(2).

## IV. CONCLUSION

¶ 77. We conclude that a mortgagee foreclosing under the shortened redemption period provided for by Wis. Stat. § 846.103(2) does not forfeit the right to obtain a judgment against a guarantor of payment even though it must waive its right to collect any deficiency from the debtor. We reach this conclusion on the

grounds that guarantors are not parties "personally liable for the debt secured by the mortgage." This statutory phrase is used in Wis. Stat. § 846.103(2) to distinguish a borrower's liability on the debt, which is a personal obligation, from the mortgagor's liability, which is an obligation limited to the property given as security for the note. The statute does not contemplate guarantors whose liability arises not from the debt but from a separate contract. We also conclude that the manifest purpose of the statute is not furthered by requiring a mortgagee to forfeit judgment against a guarantor of payment when proceeding under the shortened redemption period of Wis. Stat. § 846.103(2).[25]

¶ 78. Here, the Boyers signed a guaranty to pay any and all debts of Boyer Construction. The guaranty was both broad and explicit. It was not tied to a specific debt. While it ultimately rendered the Boyers liable for the amount of the debt secured by the mortgage, it did not render them liable for the debt itself. Accordingly, the Boyers were not "personally liable for the debt secured by the mortgage" within the meaning of Wis. Stat. § 846.103(2), and we conclude that Bank Mutual did not forfeit its right to obtain a judgment against the Boyers by proceeding under the shortened redemption period provided by that statute.

---

[25] The dissent argues that if a guarantor has recourse against a debtor, our interpretation "risks defeating [the] very purpose of the statute" and "opens the door to more litigation." Dissent, ¶ 127. The guarantors in this case (the Boyers) did not seek recourse against the debtor (S.J. Boyer). Neither party briefed the issue of whether guarantors may seek recourse against a debtor because that issue simply has nothing to do with this case. We decline to base our interpretation of the statute upon speculation that this issue may arise in a future case.

¶ 79. For these reasons, we conclude that the court of appeals erred when it concluded that the circuit court applied an improper standard of law by denying the Boyers relief under Wis. Stat. § 806.07. The circuit court appropriately exercised its discretion by refusing to relieve them of the judgment.

¶ 80. Because we conclude that Wis. Stat. § 846.103(2) does not require a mortgagee to waive judgment against a guarantor of payment when it elects a shortened redemption period, we decline to address whether the Boyers waived any rights provided by the statute.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 81. ANNETTE KINGSLAND ZIEGLER, J., did not participate.

¶ 82. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). This case raises a question of statutory interpretation in the context of commercial lending. It arises in the context of Wisconsin statutes governing mortgage proceedings, but the case is also enmeshed in the "hoary and distinctive body of law"[1] that governs suretyship and guaranty relationships.[2]

¶ 83. The majority opinion resolves this case with a narrow focus, looking at a portion of the immediate statutory language at issue without an eye to the broader

---

[1] Frank S.H. Bae & Marian E. McGrath, *The Rights of a Surety (Or Secondary Obligor) Under the Restatement of the Law, Third, Suretyship and Guaranty,* 122 Banking L. J. 783, 783 (2005) (quoting Donald J. Rapson, *History and Background of the Restatement of Suretyship,* 34 Wm. & Mary L. Rev. 989, app. B (1993).

[2] Various authorities use the terms "guaranty" and "surety" to describe similar kinds of relationships and obligations. Here the agreement in question is termed a guaranty and I follow

foreclosure scheme in which the case unfolds and without addressing the law governing the relationships and obligations among creditors, debtors, and guarantors.

that terminology. The relevant rules of law do not depend on the label which is applied.

"There is still considerable dispute about the distinction between a surety and a guaranty." Bae & McGrath, *supra* note 1, at 786. The Restatement (Third) of Suretyship and Guaranty sensibly resolves this confusion by taking a unified and functional approach, referring to "obligors" and "obligees." In the Restatement, the principal obligor is the debtor. Section 1, cmt. c. of the Restatement notes that differences between sureties and guaranties "have been the subject of extended debate, not all of which is illuminating. A 'surety' is typically jointly and severally liable with the principal obligor on an obligation to which they are both bound, while a 'guarantor' typically contracts to fulfill an obligation upon the default of the principal obligor. The provisions of a particular guaranty or suretyship contract, however, will often blur much of this distinction." *Black's Law Dictionary* (8th ed. 2004), in defining "surety," asserts, "A surety differs from a guarantor, who is liable to the creditor only if the debtor does not meet the duties owed to the creditor; the surety is directly liable."

Wisconsin case law, however, has drawn essentially this same functional distinction by distinguishing between a "guaranty of payment" and a "guaranty of collection." See *Schlesinger v. Schroeder*, 210 Wis. 403, 406–07, 245 N.W. 666 (1932) (under a guaranty of payment, "[t]here is no obligation on the part of the creditor to proceed against the principal debtor, and if the latter fails to pay, an action may generally be maintained against the guarantor, without a demand or legal proceedings against the principal. Nor is a creditor, before proceeding against the guarantor, under any legal obligation to resort to securities given by the principal debtor.").

Regardless of the choice of terms employed, as discussed below, *see* ¶ 6 & n.6, ¶ 9, the guarantors in this case are made liable to the creditor under the terms of their agreement without requiring prior collection or action against the principal debtor.

¶ 84. As one commentary notes, "[D]espite its long history, suretyship is an area of the law that has received scant attention in recent years . . . . [E]xcept for those who work in commercial lending or the issuing of contract bonds, most attorneys remain unaware of even the basics . . . ."[3] This court has seldom been asked in recent years to unravel the complexities of the law involving guarantors. Although the Restatement (Third) of Surety and Guaranty was published in 1996 and offers a potentially invaluable tool to clarify and modernize the law, it appears that the Restatement (Third) has never been referenced by this court and the majority does not address it in the present case.[4]

¶ 85. In my view, this case can not be resolved properly without addressing the law governing guaran-

---

[3] Bae & McGrath, *supra* note 1, at 783.

[4] The court of appeals referenced the Restatement (Third) in *Insurance Co. of North America v. DEC International, Inc.,* 220 Wis. 2d 840, 849–51, 586 N.W.2d 691 (Ct. App. 1998). An unpublished circuit court decision also referenced Section 48 of the Restatement (Third). *See M&I Marshall & Ilsley Corp. v. Hougard,* unpublished slip op., No. 03–CV-1039, 2004 WL 3252086 (Cir. Ct. Brown Co. May 13, 2004) ("[T]he Wisconsin Courts are in accord with the Restatement 3rd, Section 48"). These cases appear to be the only readily discoverable citations to the Restatement (Third) in the Wisconsin courts.

The Reporter for the Restatement commented at the time the Restatement was being drafted that the most recent treatises on suretyship dated to 1950 and 1951. Neil B. Cohen, *Striking the Balance: The Evolving Nature of Suretyship Defenses,* 34 Wm. & Mary L. Rev. 1025, 1025–26 & n.1 (1993) (citing Arthur A. Stearns, *The Law of Suretyship* (5th ed. 1951); Laurence P. Simpson, *Handbook on the Law of Suretyship* (1950)).

For more recent texts on suretyship, see Peter A. Alces, *The Law of Suretyship and Guaranty* (1996); *The Law of Suretyship* (Edward G. Gallagher ed., 2d ed. 2000).

tors. Because the majority does not address this area of the law, it leaves important issues unresolved or re solves them without a view to the implications for future cases. By failing to consider carefully the inter-relationship between the law governing guarantors and the foreclosure statute it interprets, the majority has, in my view, reached the wrong result in this case.

¶ 86. Wisconsin Stat. § 846.103(2), protects those who are "personally liable for the debt secured by the mortgage" against a "judgment for any deficiency which may remain due to the plaintiff" following a foreclosure sale. The question in this case is whether this provision protects the guarantors sued by the creditor, in addition to protecting the debtor.

¶ 87. It is undisputed that guarantors are liable according to the terms of their guaranty contract, which in the present case is a guaranty of payment, not a guaranty of collection.[5] The majority opinion parlays this truth to mean that guarantors do not come within the statutory phrase "personally liable for the debt"[6] and therefore, according to the majority opinion, are

[5] *See supra* note 2; *First Wis. Nat'l Bank of Oshkosh v. Kramer*, 74 Wis. 2d 207, 246 N.W.2d 536 (1976).

[6] The guaranty in the present case explicitly states that the guarantors remain liable to the Bank even though any obligation is invalid or unenforceable against any debtor. The guaranty provides: "This guaranty is valid and enforceable against the undersigned [guarantors] even though any Obligation is invalid or unenforceable against any Debtor." This language appears to state that as between the guarantor and the creditor, the guarantor will not impose defenses the debtor may have against the creditor regarding the validity of the debtor's obligation. In other words, the guarantor waives defenses. In other provisions of the guaranty, the guarantor consents in advance to various acts the creditor and debtor may perform.

"not members of the class of persons against whom a mortgagee must waive judgment" when the mortgagee elects to proceed under the shortened redemption period allowed under Wis. Stat. § 846.101. *See* majority op., ¶ 3. Here's where I part company with the majority.

¶ 88. To honor the common and ordinary meaning of the statutory language and to effectuate the purpose and intent of the statute, I conclude that the guarantors under the guaranty in the present case *are* within "the class of persons against whom a mortgagee must waive judgment when invoking Wis. Stat. § 846.103(2)." The guarantors are, in my view, "personally liable for the debt secured by the mortgage" within the operation of Wis. Stat. § 846.103(2).

## I

¶ 89. I agree with the court of appeals that as a matter of law the guarantors are personally liable for the debt.[7]

¶ 90. As guarantors of payment, the guarantors in the present case are, under Wisconsin law, primarily

---

The effect of these provisions is to render the guarantor liable even when the guarantor's risk is increased by the debtor and creditor.

The question before the court is whether Wis. Stat. § 846.103(2), which protects those who are "personally liable for the debt" against a deficiency judgment, trumps the waiver and consent language in the guaranty and protects guarantors against suit by the creditor on the guaranty. The majority opinion in effect holds that the waiver and consent language of the guaranty trumps Wis. Stat. § 846.103(2).

[7] *Bank Mut. v. S.J. Boyer Constr., Inc.,* 2009 WI App 14, ¶ 15, 316 Wis. 2d 266, 762 N.W.2d 826 ("Given the effect of the guaranty of payment, we conclude the Boyers were personally liable for the debts secured by the mortgages.")

liable for the payment of the debt secured by the mortgage.[8] Majority op., ¶ 59. The Bank need not make any effort to collect the debt from the debtor or against the collateral before proceeding against the guarantor. Rather, the Bank can seek payment from the guarantor first, directly and with or without any action against the debtor.[9] There is only one source of debt underlying this case, the debt due on the five notes secured by the mortgages. There is likewise no dispute that the money judgments entered against the guarantors correspond to the amount owing on this same debt, and there is no dispute that the guarantors are personally liable for payment of any unpaid portion of that debt.

¶ 91. Nevertheless, the majority insists that the guarantors are not "personally liable" for this debt within the meaning of Wis. Stat. § 846.103(2).

¶ 92. The majority opinion reaches this counterintuitive result by elevating form over substance, repeatedly asserting that the guarantors are liable on the guaranty, not for the underlying debt itself. I agree with the majority opinion that the guarantors' liability for the debt of the debtor is based on the guaranty. But the substantive effect of the guaranty is to render the guarantors personally obligated to pay the debt secured by the mortgage.

¶ 93. I agree with the court of appeals that as a matter of law the guarantors are personally liable for the debt.

---

[8] *Kramer,* 74 Wis. 2d at 212 (the guarantors "are individually liable as principals").

[9] *Id.*

## II

¶ 94. The common and ordinary definition of the statutory phrase "personally liable for the debt secured by the mortgage" includes guarantors. The majority opinion, ¶ 39, effectively admits as much, conceding that the phrase "does not clearly exclude guarantors" and that "reasonable people could read the language to cover the Boyers." The court of appeals similarly concluded that "nothing in the plain language of the phrase categorically excludes guarantors of a debt from being personally liable."

¶ 95. Unless there is a good reason to interpret a statute other than by using the ordinary meaning of words, a statute should be interpreted in the way that lawyers and non-lawyers who read the statute will understand it without examining multiple other authorities.

¶ 96. *Black's Law Dictionary* (8th ed. 2004) defines "personal liability" to mean "[l]iability for which one is personally accountable and for which a wronged party can seek satisfaction out of the wrongdoer's personal assets." No one contests that the liability of the guarantors in the present case is "personal liability" in this sense. Indeed, the whole point of requiring the personal guaranty of the principals or owners of a corporation is that those individuals will be personally liable to repay the debts of the corporation.[10]

---

[10] The brief of the Wisconsin Bankers Association as amicus curiae states on page 1, "The situation presented in the *Bank Mutual* case is typical. A lender makes a loan to a small or medium sized business, often a closely-held corporation or limited liability company, secured by a mortgage on real estate owned by the principal borrower. Often the lender will also

¶ 97. The majority departs from the dictionary approach (an approach favored by this court) and treats the phrase "personally liable for the debt secured by the mortgage" as "a legal term of art," susceptible of a special meaning "in the context of foreclosure law."[11]

¶ 98. The majority therefore sets out to determine the "specific legal meaning" of the words "personally liable," an endeavor that involves reading Wisconsin and Illinois cases and numerous other legal authorities. Majority op., ¶¶ 41–52. I would take a shorter and simpler route of statutory interpretation in the instant case.

¶ 99. Mortgages and guaranties are the everyday business of lenders and borrowers. Some persons are represented by lawyers when signing mortgages and guaranties, many are not. Lawyers and non-lawyers alike ought to be able to read and understand Wis. Stat. § 846.103(2) without going outside the statute books to determine whether words that have a common, ordinary meaning take on a "specific legal meaning" when interpreted by reference to other authorities. The common and ordinary understanding of the statutory language is that guarantors are personally liable for the debt secured by the mortgage. I would adopt that understanding.

III

¶ 100. The statutory phrase "personally liable for the debt secured by the mortgage" is used in three statutory provisions in chapter 846: Wis. Stat. §§ 846.04, 846.101, and 846.103(2). Section 846.04 gov-

require the personal guaranties of the principals of the business to further support the loan and protect the lender."

[11] Majority op., ¶¶ 39, 41.

erns a complaint seeking foreclosure and any deficiency that may remain due the plaintiff "against every party who is personally liable for the debt secured by the mortgage." Section 846.101 and § 846.103(2), the statute at issue here, are similar provisions applicable to different types of property; each provides for foreclosure with a shortened redemption period but without deficiency.

¶ 101. I agree with the majority opinion that the same statutory language in each of these statutes should be given a consistent meaning. But I depart from the majority's analysis and conclusion on this point.

¶ 102. The majority attempts to determine the meaning of the phrase "personally liable for the debt secured by the mortgage" in § 846.103(2) by examining the same phrase in Wis. Stat. § 846.04 but comes up empty-handed. Majority op., ¶¶ 32–38. The majority's analysis of Wisconsin cases cannot determine what the phrase means in § 846.04 and concedes that the law reveals "inconsistent results." Majority op., ¶ 38. The majority's own review of the law therefore seems to conflict with its premise that the phrase "personally liable" as used in Wis. Stat. §§ 846.04 and 846.103(2) is a term of art embodying a single, pre-existing "specific legal meaning." Majority op., ¶ 39.

¶ 103. The majority therefore resolves the meaning of the phrase "personally liable for the debt secured by the mortgage" first by even further narrowing its focus to examine only the words "personally liable," eventually turning to Illinois law, relying on *City of Chicago v. Chatham Bank of Chicago*, 203 N.E.2d 788 (Ill. App. 1964) to inform its definition of "personally liable" in the Wisconsin statutes. Majority op., ¶¶ 48–50.

¶ 104. The majority's reliance on the *Chatham* case is misplaced. The reasoning of the *Chatham* case rests on two factors that do not bear on the resolution of the present case: (1) the language and interpretation of the Illinois statute, and (2) an outmoded jurisdictional distinction in Illinois between judgments entered in law and in equity.

¶ 105. The Illinois foreclosure statutes allowed "a personal deficiency decree against the persons indicated as being personally liable therefor . . . ." *Chatham,* 203 N.E.2d at 793. A long line of Illinois cases established that a guarantor could not be joined in the action of foreclosure and the equitable remedy of a deficiency decree could not be entered against the guarantor in a foreclosure action. Rather, the liability of the guarantor "was a purely legal liability, enforceable only in a court of law."[12] Therefore the established law of Illinois was that "the Circuit Court sitting in chancery" lacked jurisdiction to render a deficiency judgment against the guarantor.[13] *Chatham* simply applied long-standing Illinois case law to hold that a guarantor cannot be sued "in a foreclosure action."[14]

¶ 106. Wisconsin law governing foreclosure and deficiency is not the same as Illinois law. Law and equity jurisdiction are merged in Wisconsin, and Wis.

---

[12] *City of Chicago v. Chatham Bank of Chicago,* 203 N.E.2d 788, 792 (Ill. App. 1964) (relying on *Schnur v. Bernstein,* 32 N.E.2d 675 (Ill. App. 1941); *Walsh v. Van Horn,* 22 Ill. App. 170 (1887).

[13] *Chatham,* 203 N.E.2d at 792 (quoting *Schnur v. Bernstein,* 32 N.E.2d 675 (Ill. App. 1941).

[14] Since *Chatham* was decided, Illinois law appears to have abolished the distinction between law and equity while maintaining an administrative division between chancery and law courts:

Stat. § 846.04 provides a more flexible foreclosure action than the Illinois law reviewed in *Chatham*.

¶ 107. In Wisconsin, a plaintiff in a foreclosure action may "demand judgment for any deficiency that may remain due the plaintiff after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage." Wis. Stat. § 846.04(1). Indeed in the present case the Bank brought a single action seeking both foreclosure and a judgment against the guarantors.[15] This procedure is consistent with the majority's reading of the deficiency statute, which the majority acknowledges "permits a combination of two causes of actions" and "unites an action in equity on the foreclosure with an action in law on the debt." Majority op., ¶¶ 43–44 (quoting and

> "[T]he Judicial Article embodied in the Illinois Constitution of 1970 has abolished the distinction between courts of law and equity so that our State's circuit courts have 'original jurisdiction of all justiciable matters.' . . . "
>
> . . . .
>
> Since jurisdiction over the cause of action was vested generally in the circuit courts, which are organized and divided for administrative convenience, the transfer of the equitable cause of action from the Chancery Division to the Law Division does not limit the remedy available to one at law. Equitable relief is available even though the case is in the Law Division. No error resulted from the transfer of the plaintiffs' claim.

*Kaplan v. Keith*, 377 N.E.2d 279, 282 (Ill. App. 1978) (quoted source omitted).

The majority does not address whether the law/equity distinction underlying the *Chatham* case still provides principled reasoning in Illinois. No such jurisdictional distinction affects the resolution of the present case in Wisconsin courts.

[15] *See also Bank of Sun Prairie v. Marshall Dev. Co.*, 2001 WI App 64, ¶ 2, 242 Wis. 2d 355, 626 N.W.2d 319 (mortgagee sued guarantor (as well as debtor) in foreclosure/deficiency action).

explaining *Farmers & Merchants Bank v. Matsen,* 219 Wis. 401, 263 N.W. 192 (1935)).

¶ 108. The majority conclusorily treats the operation of the deficiency provisions as extending to the debtor but not to the guarantor. *See* majority op., ¶ 51.[16] But in Wisconsin, in contrast to Illinois, a guarantor can be made a party in a foreclosure/deficiency action.[17] The present case illustrates that the mortgagee may proceed under Wis. Stat. § 846.04, bringing interdependent claims both for foreclosure and for a money judgment against a guarantor for any amount still owing. Here, the claim against the guarantors, brought together with the foreclosure action, was for the "amounts alleged owing" on the notes secured by the mortgages. Neither statutory procedure nor a distinction between law and equity jurisdiction requires these claims to be brought separately in Wisconsin.

¶ 109. Under the Wisconsin statutes, the "judgment for deficiency" is to be both ordered as part of the "original [foreclosure] judgment" and also "separately rendered against the party liable." Wis. Stat. § 846.04(1).

---

[16] The majority argues that Wis. Stat. § 846.04 "permits a deficiency judgment within the foreclosure action" only against the borrower. Majority op., ¶ 51. This argument simply applies the conclusion that the majority has already reached to § 846.04. It does not provide any additional argument supporting the majority's unpersuasive conclusion that the guarantors are not among the parties "personally liable for the debt secured by the mortgage."

[17] "Thus, while a mortgagee may bring a claim against a guarantor as part of the same legal proceeding, it must bring a separate cause of action and separately prove the guarantor's liability on the contract of guaranty." Majority op., ¶ 51.

In Wisconsin, the mortgagee has a choice whether to seek payment from a guarantor in the foreclosure action or to bring a separate action. *See* majority op., ¶ 56.

¶ 110. And in fact separate judgments were rendered in the present case: A foreclosure judgment was entered on the five mortgaged properties; a separate judgment for the total amount owing on the notes was entered against Steven Boyer as guarantor; and a similar default judgment was entered for the same amount against Marcy Boyer as guarantor. *See* majority op., ¶ 9. No judgment for the amount due on the notes was separately rendered against Boyer Construction, the debtor.

¶ 111. The present case, in contrast to the Illinois law relied upon by the majority, therefore illustrates that there is no procedural or jurisdictional bar in Wisconsin to seeking judgment for the amount owed by a guarantor in the same suit in which foreclosure is sought under Wis. Stat. § 864.04.

¶ 112. Taking a realistic view of the situation, what is at stake in the single foreclosure suit brought by the plaintiff in the instant case is a deficiency judgment, whether the judgment is entered under the foreclosure causes of action or "separately rendered" under the interdependent cause of action brought against the guarantors. To say that the judgment sought against the guarantors is not a deficiency judgment would only further elevate form over substance.

¶ 113. Thus I conclude that the guarantors in the present case are "part[ies] personally liable for the debt secured by the mortgage" under both Wis. Stat. § 846.04 and § 846.103(2).

¶ 114. The majority focuses its analysis narrowly on interpreting the phrase "personally liable." *See* majority op., ¶¶ 41–47. The circuit court in the instant case noted that "in a lot of ways that's what this case comes down to[,] . . . that the damages act as a deficiency. I guess that's the question. Do they act as a

577

deficiency." The majority focuses on the question of whether the guarantor is "personally liable" for the debt in this case and does not take up the intertwined question of whether the judgment from which the defendants seek relief qualifies as a "judgment for any deficiency" under Wis. Stat. §§ 846.04(1) and 846.103(2).

¶ 115. The majority does not take a realistic view of the situation in the present case and relies on foreign law that presupposes both a narrower statutory remedy than applies here and a delineation of law and equity jurisdiction which no longer has any force.

¶ 116. By contrast, I conclude that the guarantors in the present case are "part[ies] personally liable for the debt secured by the mortgage" under both Wis. Stat. § 846.04 and § 846.103(2).

¶ 117. To proceed in this suit under the shortened redemption period allowed by Wis. Stat. § 846.103(2), the plaintiff must waive judgment for the amount of deficiency against "every party who is personally liable for the debt secured by the mortgage," and "no judgment for deficiency may be . . . separately rendered" against such parties. Reading Wis. Stat. § 846.103(2) together with Wis. Stat. § 846.04(1) and applying the statutes to the facts of the present case, I conclude that the Bank was required to waive the right to have a judgment for the amount of deficiency entered against the guarantors when it elected to proceed under Wis. Stat. § 846.04(1).

IV

¶ 118. The majority does not reckon with the body of law governing guarantors in Wisconsin. Critical questions implicating surety and guaranty law are

raised but unanswered by the majority. The questions the majority leaves open under guaranty law raise serious misgivings about whether the majority's opinion undermines the purpose of Wis. Stat. § 846.103(2) to protect the debtor.

A

¶ 119. The majority does not discuss whether a plaintiff's (mortgagee's) election of waiver under Wis. Stat. § 846.103(2) functions as a discharge of the debt or only as the creditor's promise not to sue the debtor for the deficiency. This question is part of a larger issue in guaranty law relating to actions that give rise to guarantors' defenses.[18] The question is significant here because it may affect whether the guarantors can or cannot ultimately recover from the debtor the amount they pay the creditor.[19]

---

[18] *See* Neil B. Cohen, *Striking the Balance: The Evolving Nature of Suretyship Defenses,* 34 Wm. & Mary L. Rev. 1025, 1043–44 (1993).

[19] The judgment entered against the guarantors was not for the amount of the deficiency but for the total amount of the debt owing on the notes ($1,436,457.85). *See* majority op., ¶ 9.

Thus the question immediately presented is not whether a deficiency judgment may be entered against the guarantors. Rather, the present case comes before the court on motions objecting to confirmation of the foreclosure sale and seeking relief from judgment. Wisconsin Stat. § 806.07(1)(e) provides that the court may relieve a party from a judgment when "[t]he judgment has been satisfied, released or discharged."

If the operation of the Bank's waiver under Wis. Stat. § 846.013(2) is to discharge the underlying debt, then under the principle of guaranty law recognized in *Akwa,* the guarantor's obligation will also be satisfied. If, on the other hand, the operation of the waiver under § 846.013(2) is construed as

579

¶ 120. This issue was explored in *Continental Bank & Trust Co. v. Akwa*, 58 Wis. 2d 376, 206 N.W.2d 174 (1973). In *Akwa*, the creditor settled with the debtor and released the debtor from personal liability, reserving its rights against the guarantor. The creditor then sued the guarantor.

¶ 121. The *Akwa* court concluded that when the release of the debtor is an agreement not to sue the debtor for the deficiency, the creditor may still make a claim against the guarantor under a guaranty (or settlement agreement) and the guarantor's remedies against the debtor remain unaffected. The reasoning is that the release is in effect merely a promise by the creditor not to sue the debtor and does not discharge the underlying debt. Accordingly, under these circumstances the guarantor is liable to the creditor for the underlying debt and the debtor remains liable to the guarantor. *Akwa*, 58 Wis. 2d at 392–93.

¶ 122. In contrast, according to *Akwa*, if the creditor's release of the debtor amounts to a discharge of the debt, then the underlying obligation is terminated and the guarantor is also released. Obviously, if the guarantor is released the guarantor does not have a claim against the debtor. *Akwa*, 58 Wis. 2d at 392–93.

¶ 123. If the court applies the *Akwa* case, it should analyze whether Wis. Stat. § 846.103(2) functions as a promise by the creditor not to sue the debtor

merely a promise by the Bank not to sue the mortgagor (Boyer Construction) for the amount of the deficiency, then under *Akwa* it appears the guarantors would still be liable. The majority's failure to address this issue amounts to a failure to resolve the bottom line dispute in the present case: whether the guarantors are entitled to relief from the judgment entered against them, in other words, whether the Boyers are personally liable to Bank Mutual for the amount of the deficiency.

for the deficiency or as a discharge of the debtor's debt. This analysis not only affects the liability of the guarantor to the creditor but also affects the rights of the guarantor against the debtor.

¶ 124. The majority opinion fails to address this issue.

B

¶ 125. This discussion leads us to another critical question not addressed in the majority opinion, namely whether the guarantors (Steven and Marcy Boyer, individually), after paying any sums they owe to the mortgagee, can in turn sue the debtor (Boyer Construction) to recover for the amount they have paid to cover the debt.[20]

¶ 126. A guarantor who pays the debtor's obligation to the creditor ordinarily has recourse against the debtor to recover the amount the guarantor paid.[21] If

---

[20] For a collection of cases on the issue of the rights of the guarantor against the debtor, see J.A. Bryant, Jr., *Mortgages: Effect upon Obligation of Guarantor or Surety of Statute Forbidding or Restricting Deficiency Judgments,* 49 A.L.R.3d 554, § 2[a] (1973) ("It has been argued that if guarantors, sureties, and the like are construed not to have been afforded the protection of the statute, upon being recovered from, they will be able to assert rights over against the principal obligors, and that such action would defeat the purpose of the statutes, thus allowing to be accomplished in two steps what was forbidden in one.").

[21] The guaranty in the present case recognizes the rights of the guarantor against a debtor who defaults on the debt. *See* guaranty at majority op., ¶ 5. The Restatement (Third) of Suretyship and Guaranty § 22(1) (1996) provides that subject to certain exceptions, "when the principal obligor [the debtor] is charged with notice of the secondary obligation [that of the

the guarantors have recourse against the debtor in the present case to collect what the guarantor paid, then Wis. Stat. § 846.103(2), which is designed to protect the debtor against personal liability, will be defeated in this second stage of litigation.

¶ 127. Thus the majority first recognizes that the statute is meant to protect the mortgagor but then adopts an interpretation of the statute that risks defeating that very purpose of the statute. The majority opens the door to more litigation.

¶ 128. A central reason why the guarantor may proceed against the debtor is that it is unfair for the creditor to use the statute totally to its advantage and harm the guarantor by changing the nature of the guarantor's obligations. The mortgagee (the Bank) has elected under the statute to impose a different risk on the guarantor than the guarantors understood at the time they agreed to the guaranty. A guarantor must expect to pay the debt but also can expect that the

---

guarantor] it is the duty of the principal obligor to reimburse the secondary obligor to the extent that the secondary obligor: (a) performs the secondary obligation . . . ." *See also Hills Bank & Trust Co. v. Converse,* 772 N.W.2d 764 (Iowa 2009) ("Where a guarantor, who has entered into contract of guaranty . . . pays or is compelled to pay his principal's debt, the law raises an *implied promise* . . . on the part of the principal *to reimburse* the guarantor . . . ." (quoting *Halverson v. Lincoln Commodities, Inc.,* 297 N.W.2d 518, 522 (Iowa 1980))).

In *Charmley v. Charmley,* 125 Wis. 297, 304, 103 N.W. 1106 (1905), the wife sued the deceased husband's estate for the money she paid on the mortgage the deceased husband had assumed. The court concluded that when a "person paying off the [mortgage] lien is secondarily liable for the debt, there springs out of the transaction an implied promise by the one primarily liable to repay the money. That does not rest on the law of subrogation. It is enforceable as a legal liability . . . ."

debtor remains under a compulsion to pay. The *Akwa* court, 58 Wis. 2d at 392–94, explained at length the unfairness of a rule that imposes continuing liability upon the guarantor when the debtor is released from liability and the burden. It is unfair to guarantors to hold them liable after the debtor is released; the guarantor's risk is increased. *See Akwa,* 58 Wis. 2d at 392.

¶ 129. Neither the text of Wis. Stat. § 846.103(2) nor the majority opinion provides an answer to the question of who wins in a guarantor's suit against the debtor when the mortgagee forecloses under § 846.103(2) and recovers against the guarantor. The question of the rights of the guarantor against the debtor is for another day as a result of the majority opinion.

¶ 130. I would resolve the interpretation of Wis. Stat. § 846.103(2) in a manner that does not open the door to further litigation or leave unaddressed a legal determination that is necessary to effectuate the purpose of the statute. I conclude that if the mortgagee proceeds under § 846.103(2), the guarantor for payment is released from liability as a party personally liable for the debt secured by the mortgage.

¶ 131. I reason as follows: The statute provides the plaintiff (usually the creditor) in a foreclosure action with a choice: the creditor may choose a longer six-month redemption period and preserve its right to collect any deficiency after the property is sold, or the creditor may choose to complete the foreclosure more quickly, electing the three-month redemption period under Wis. Stat. § 846.101(2). To gain the advantage of the shorter redemption period, the creditor must give something up, specifically, its right to collect the amount of deficiency after sale.

¶ 132. The basic outline of this legislative scheme is embodied in Wis. Stat. 846.103(1) and (2), and the majority acknowledges the obvious tradeoff this statutory scheme puts in place: "Both Wis. Stat. § 846.101 and 846.103(2) permit shortened redemption periods *in exchange for* waivers of certain deficiency judgments." Majority op., ¶ 31.[22]

¶ 133. But under the majority's interpretation, the basic principle of this "exchange" is vitiated. The creditor may shorten the redemption period, limiting the mortgagor's opportunities to avoid foreclosure, but the creditor gives up little, if anything, in exchange, if there is a guarantor. So long as there is a guarantor, the creditor, under the majority opinion, may still collect the deficiency. Simply put, the majority displaces the choice the legislature created for mortgagees/lenders proceeding in foreclosure actions and now allows mortgagees to "have their cake and eat it too."

¶ 134. The practical effect of the majority's thin-slicing of the statutory language is that property owners facing foreclosure around Wisconsin will now have three months in which to avoid foreclosure instead of the six months for which the legislature has generally provided. Creditors who otherwise would have allowed

---

[22] This court recognized the balance of interests intended by the legislature interpreting it the parallel provisions of Wis. Stat. § 816.101(2) (1973) in *Glover v. Marine Bank of Beaver Dam,* 117 Wis. 2d 684, 694–95, 345 N.W.2d 449 (1984):

[T]he legislature sought to . . . shorten[] the period of redemption in a complicated, costly, time-consuming procedure. This obviously benefits the mortgagee, since the mortgagee may be able to reduce the losses normally attendant to the twelve-month redemption period. . . . However, the mortgagor is also protected, because at the end of this shortened period, the mortgagor is secure in the knowledge that he or she will not be responsible for any deficiency resulting from the sale.

the six-month redemption period to run in order to preserve their right to collect any deficiency will now have incentive to elect the shortened redemption period and then also proceed against any guarantors for the amount of the deficiency.

¶ 135. The majority reaches this result on the basis of a counterintuitive and narrow reading of the statutory language that ignores numerous critical questions. I therefore do not join the majority's interpretation, which is contrary to the common meaning of the words themselves and substantially undermines the operation and purpose of the statute.

¶ 136. For the foregoing reasons, I write separately in dissent.

¶ 137. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.